Pérez v. The Yabucoa Sugar Co.

Appeal from the District Court of San Juan.

No. 309.—Decided April 13, 1909.

Damages—Negligence—Proper Appliances.—In order that a plaintiff may obtain a judgment for damages in a case such as presented in the record, it is necessary to show negligence on the part of the defendant or his agents, and that the defendant company failed to furnish proper appliances with which its employes could discharge their duties and perform the work assigned to them.

Id.—Dangerous Place—Acceptation of Risk.—Even though the place where the plaintiff worked were dangerous, which has not been shown, a young fellow such as plaintiff, of 15 or 16 years of age, was fully capable of observing its conditions, and we must hold that he assumed whatever risk was involved in such dangers.

Id.—Minor—Contributory Negligence.—A boy of 15 or 16 years of age, of ordinary intelligence and engaged in working about machinery, would be held to the same care and caution as an adult, or a man over 21 years of age.

Id.—Employment of a Minor.—There is no law in Porto Rico prohibiting the employment of a boy of 15 or 16 years of age in a sugar factory.

Id.—Dangerous Nature of the Employment—Risks.—The question of the dangerous nature of the employment and the risks to be run in the discharge of same must be considered by the laborer before he engages in the hazardous employment, or as soon thereafter as the danger comes to his notice.

Id.—Servants—Employes—Risks Incident to the Employment—Presumption.—Every servant or employe must be presumed to possess ordinary intelligence and sufficient judgment and discretion to realize and properly appreciate the dangers and risks incident to his employment and which are patent and obvious, and it is presumed that he knows and realizes that such risks exist.

Id.—Contract for Services—Risks of the Employment—Presumption.—When a person becomes an employe of another it is presumed that the contract for services or of employment was made with full knowledge on the part of the employe of all of the risks and dangers of the employment, and if an employe, under such circumstances, continues in the hazardous employment, after full knowledge of the risks to which he is exposed, by reason of the defects in the appliances furnished him for the work, and makes no complaint on account thereof, but thus voluntarily accepts such risks, he cannot recover damages from his employer for injuries subsequently received by reason of such defects in the machinery.

Ocular Inspection—Authority of a Judge to Make Same.—There may be some question as to whether a judge in a civil case is authorized under our present code to make an ocular inspection of the premises, and to base his judgment or any part thereof on such ocular inspection; but as this practice existed formerly and has not been formally abolished, but has been tacitly

continued, we will not hold it to have been unauthorized or contrary to proper legal procedure in the absence of any objection raised thereto.

AGE OF PLAINTIFF—PROOF OF MINORITY—GUARDIANSHIP.—The evidence offered and admitted that there had been a guardian appointed for the plaintiff minor was sufficient to establish his status as such minor, as was also the testimony of the minor himself.

The facts are stated in the opinion.

*Mr. Antonsanti* for appellant.

*Mr. Bosch* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

The Yabucoa Sugar Co., the respondent herein, is a private corporation, duly chartered and organized under the laws of Porto Rico, having its principal office and domicile in the capital city of this Island, at No. 19 on San Justo Street, and is the owner of a certain central called "Merceditas," having all the machinery necessary to the manufacture of sugar; and was engaged in such manufacture on April 13, 1907.

Ambrosio Pérez, the appellant, was, prior to the beginning of this suit, appointed guardian of the minor, Julio Díaz Sánchez, and his appointment duly registered; and he was, therefore, authorized by the District Court of San Juan to institute the suit in which this judgment was rendered.

Accordingly the plaintiff began an action for damages against the defendant and, after several amendments, on January 21, 1908, filed an amended complaint in which, after making the necessary formal allegations, he set forth in effect the following as the substantial facts on which he claimed a recovery against the defendant of damages amounting to two thousand dollars ($2,000).

Plaintiff alleged, in substance, that, on April 13, 1907, his ward, Julio Díaz, was employed by the defendant company on wages at the rate of 50 cents per day; it being the duty of the said Díaz to take care, and see to it, that the lower part of the cane carrier was always clean and unobstructed, and to remove therefrom the canes that might fall down from the higher part of the cane carrier, while the latter was in motion; all of which was done by the said Díaz, under the in-

structions which he had received from the said defendant company, its agents and employes.

The complaint further substantially alleged that, on the said April 13 the said Julio Díaz was engaged in the performance of his duty cleaning the said cane carrier and taking care that none of the pieces of cane might fall into the lower part of the same, in doing which, he exerted the proper zeal, care and diligence required by the nature of his work.

And plaintiff further alleged that it was the duty of the defendant sugar company to employ competent persons to care for, watch over and supervise the machinery by which the cane carrier belonging to the central was moved and operated.

It was further substantially set forth in the complaint, that, while Julio Díaz Sánchez was discharging his duty, cleaning the cane carrier, as has been said before, the said cane carrier was stopped, in order that he might remove therefrom a piece of cane, and while he was removing the said piece of cane, which had entangled itself in said cane carrier, the engineer, Francisco Meléndez—that is to say, the person who had been put in charge of the machinery, by the aforesaid corporation—put the cane carrier in motion, without warning Julio Díaz Sánchez, whose right arm was caught and completely torn to pieces by the said cane carrier.

The complaint also set forth the allegation that the defendant company behaved in such a negligent and careless manner, as to permit and allow an inexperienced person to have charge of the machine, by which the cane carrier was put in motion, and to permit a person like him, the said Julio Díaz Sánchez, to work in such a dangerous place, without taking into consideration the capacity, age and other circumstances of said minor.

And finally, the plaintiff in effect alleges in his complaint that, on account of the fact that the machine which moved the cane carrier was suddenly started, said cane carrier, after being put in motion, caught and crushed the right arm of said Díaz; all of which was due to the carelessness and negligence

of the defendant company, which was acting through its employes, agents and representatives. That the said Díaz sustained several wounds on his right arm, in consequence of which it was necessary to amputate the same; and that he suffered much physical pain and mental anguish, which were caused by the wounds he had received; and that, by said wounds, the aforesaid Díaz has been permanently disabled from earning money.

In the answer, filed by the defendant company, there is set up as a defense the contributory negligence of the said Díaz, and it continues by denying generally all facts set out in the complaint inconsistent with the allegations of the answer.

On the trial the district judge deemed it necessary to make an ocular inspection of the premises and machinery of the central "Merceditas," where the accident occurred, and did so; though he apparently failed to file any statement or memorandum of his findings and the result of such inspection except such as is contained in the opinion on which the judgment was based, which is set forth in full in the record.

The plaintiff in this case introduced as documentary evidence, a letter which, on June 25, 1907, was addressed by the attorney of Julio Díaz, who represents the plaintiff herein, to the president of the Yabucoa Sugar Co., informing him that, on the said date, he would bring a suit for damages on account of physical injuries, and the defendant presented a sketch of the machinery referred to in the suit, and with said sketch before them the witnesses gave their testimony, which was heard by the court. No question is raised concerning the propriety of introducing or the effect to be given these papers.

It can be gleaned from the record that Julio Díaz was employed by the Yabucoa Sugar Co., to work at night in removing pieces of cane from the cane carrier, which carries the cane of said factory, and taking care that the lower part of said cane carrier was always clean, and that the canes that might fall from the higher part were at the proper time removed therefrom; and further that the cane carrier stops from time

to time, in consequence of the wads or piles formed by the agglomeration of the cane, and that the said cane carrier always starts anew, without any warning to the employes, who are aware of this custom; and Julio Díaz Sánchez himself was not ignorant of the fact that it was so; and it appears that the plaintiff began to work at 12 o'clock at night; and about an hour and a half or two hours thereafter the accident took place, which has given rise to this complaint; and further that he had a lantern to supply him with light by which to do his work; and finally that he was alone at the place where he worked, and assistance was rendered him immediately after the accident occurred.

There is a conflict also apparent from the record in the testimony given by the several witnesses, in behalf of the respective parties, in regard to the exact point of the machinery where the arm of the laborer, Díaz, was caught and destroyed, and also as to the fact of whether or not the place where he was required to work was a dangerous one.

In regard to the first of said points, attention must be called to the fact that none of the witnesses, except Julio Díaz Sánchez himself could give any information as to the manner and place where he was caught by the machine, considering that he was working alone, and the only thing that the witnesses could see was the situation in which they found him when they came to his assistance. Julio Díaz, according to the record, says that his arm was caught between the cane carrier and the cylinder or roller, which moved the same, while the witnesses for defendant assert that his arm was seized between the journal boxes and the planks which protect the cane carrier.

In regard to the second of the points it appears, from the ocular inspection of the trial judge, that in the department destined for receiving the cane and conveying the same by the cane carrier to the mill there were, on the floor, a few large boards or planks which were from a foot and a half to two feet in width, which, when taken away, showed a passage

beneath the floor, which was about 10 meters in length, and very narrow, being only a foot and a half wide, so that there was hardly room enough for a person standing sideways to work, while the depth was sufficient.

The aforesaid passage appears to be formed, on one side, by a brick wall and on the other side the cane carrier is operated. The lower part of the latter is a little more than a foot above the ground and runs parallel with the same, until it reaches the end of the said narrow passage, where there is an iron axle, which at its ends has two wheels which are similar to those used on railroad cars. These wheels have two different edges or flanges, the thickest of which has cogs which fit into the links of the cane carrier, and in this manner draw the latter along and make it run and operate.

The narrowest and projecting edge or flange seems to serve the purpose (like the flanges of railway-car wheels), of preventing the cane carrier from running off its proper track. Between the two wheels there is only the axle referred to which is about four inches in diameter, and the ends of said axle rest upon fulcrums on which they turn and on which there are the journal boxes—that is to say, two pieces of iron which are united and within which the aforesaid axle turns, and which serve as fulcrums for said axle and as a means to prevent the same from leaving its proper place. The said wheels are separated from the fulcrums a little more than a finger's width and the axle is sufficiently raised above the fulcrum to leave room for the hand and half the forearm. At a distance of a little less than a foot from the circumference of the said wheel there exists a wooden girder, and this is followed by other girders throughout the entire length of the aforesaid passage. Between every two girders there is an opening which is from three to four feet wide, except the opening left by the first girder, which, as has been said before, is only about a foot distant from the circumference of the wheel above mentioned.

The laborer who works in said passage, in spite of the diffi-
culty arising from the narrowness of the same can pass along
the entire length of the passage, without any danger of being
caught by any apparatus, that might cause him any injury;
inasmuch as the cane carrier has no cogs, and moves very
slowly, and the axle, which has been described, and which rests
upon the cylinder or roller, cannot, by itself, produce any acci-
dent unless one puts his hand between the wheel and the ad-
joining plank, which serves as a basis for the journal box, or
one puts his arm under the said axle. The said passage is
many meters in length, and the person employed in said pas-
sage can, therefore, comply with his duty without any neces-
sity of approaching the wheel upon which the cane carrier
turns; and he, therefore, can do his work at such a distance
from the aforesaid wheel, so that he can fulfill his duty with-
out any danger to his person, by reason of the slow motion of
the cane carrier referred to.

From the ocular inspection made by the trial judge he was
impressed with the idea that the company did not treat the
workmen employed in the factory, to work in this narrow pas-
sage, with the proper humanity, nor put them in a situation
to work comfortably; and even that it was inhuman to put an
employe to work under such conditions; but the judge found,
nevertheless, that the place, while uncomfortable, was not
dangerous.

The trial judge also found, as a result of his ocular inspec-
tion, that Díaz could have fulfilled his duty to the defendant
company, to keep the cane carrier clean from the few pieces
of cane that fall from the higher part of the latter, upon the
lower part thereof without any necessity of attempting to re-
move the same, at a place where there really might be dan-
ger—that is to say, between the edge of the wheel and the links
of the carrier—as he could do the same work without any
danger to his person at the other remote points of the cane
carrier, which are distant from the wheels, and at which points
one can work with greater ease and without any danger what-

ever. Along the passage, which has a considerable length, there are different holes or openings, long before arriving at the wheel; and at these openings he might have removed the pieces of cane that fell from the higher part of the cane carrier, and if he had done so he would not have come to the back part of the cane carrier, and would thus have avoided the danger; and in consequence of all this it may be thought that if he did not clean the cane carrier in this manner, and if, for the purpose of removing a piece of cane, he put his hand in the only place where he really could have been injured—that is to say, near the junction of the wheel and the 'inks of the cane carrier—then he did not exercise proper care and diligence in the performance of his duties, but was negligent therein.

A careful search of the record fails to show any evidence whatever of any negligence on the part of the defendant or its agents in the premises; nor is it shown that defendant failed to furnish proper appliances with which its employes could discharge their several duties and perform the work assigned to them. Some such evidence as this is essential to a recovery of damages by the complainant.

Probably some of the appliances were not as perfect or convenient as could be desired; in fact the place where plaintiff was required to work was very narrow and uncomfortable, but it was not dangerous and even if it had been, a young fellow 15 or 16 years old was capable of observing the conditions and he must be held to have taken the risk of all such dangers, they being as evident to him as to anyone else.

In fact, it is found by the trial judge, from all the evidence before him, aided by the ocular inspection made in the case, that not only was the place where Díaz worked not dangerous in itself but that he did not exercise the proper care in the performance of his duties. Is there anything apparent from the record to show that this finding was erroneous? We think not.

But it is claimed by the plaintiff that the boy, Julio Díaz, being a minor only 15 or 16 years of age, no care or diligence

could be required of him, and that no contributory negligence could be imputed to him, but, on the contrary, that the defendant company must be held to have incurred negligence in permitting a person like Julio Díaz Sánchez to work in such a dangerous place without taking into consideration the capacity, age and circumstances of said minor—that is to say, that the negligence of the company consists in the mere fact of having employed a boy who has not attained his majority, in such a perilous occupation as that in which he was engaged. There is no law in Porto Rico forbidding the employment of a lad of 15 years of age in a sugar factory, especially in light work like that of cleaning the cane protruding from the upper side of the carrier, such as that assigned to Julio Díaz in this case.

According to the definitions given to the word adult by the dictionary of the Spanish Academy, based on the civil law, such a boy would be deemed an "adult"; though under the common law he would not be so classed. However a lad 15 years old, of ordinary intelligence, engaged in working about machinery, would be held to the same care and caution as an adult or a man over 21 years of age. The questions of the dangerous nature of the employment and the risks to be run in the occupation undertaken, must be considered by the laborer before he engages in the hazardous employment, or as soon thereafter as the danger comes to his notice. (*Cudahy Packing Co.* v. *Marcan,* 54 L. R. A., 261; *Fones* v. *Phillips,* 39 Ark., 17; 43 Am. Rep., 264; 11 Thompson on Negligence, p. 977; *Mundhenke* v. *Oregon City Mfg. Co.,* 1 L. R. A. N. S., 278; *Lenahan* v. *Pittston Coal Min. Co.,* 12 L. R. A. N. S., 461.)

There can be no doubt that an adult servant or employe is presumed to possess ordinary intelligence and sufficient judgment and discretion to realize and properly appreciate the dangers and risks incident to his employment which are open and obvious; and it is held that knowledge of them on his part will be presumed to exist or imputed to him as matter of law.

(*C. & N. R. R. Co.* v. *Ross,* 112 U. S., 382; *Gaertner* v. *Schmitt et al.,* 47 N. Y. Supplement, 521.)

It is well settled, by the great current of authority, that when any person becomes the employe of another, and engages to perform certain labor, he assumes all the risks ordinarily incident to the business. It must be presumed that the contract of employment was made in full view of all the risks ordinarily appertaining to the particular duties required of the employe, and that he had sufficient notice of all dangers which were patent and obvious, or should properly have been so, to a person of the mental capacity and experience of the person employed. And if an employe, under such circumstances, continues in the hazardous employment after full knowledge of the risks to which he is exposed, by reason of defects in the appliances furnished him for the work, or by reason of any lack of proper appliances, and makes no complaint on account thereof, but thus tacitly he voluntarily accepts such risks, he cannot recover damages from his employer for injuries, subsequently received, by reason of such lack or defects in the machinery or appliances with which he is required to perform the duties of his employment. (*C. B. & Q. Ry. Co.* v. *McGinnis,* 683 W. Rep., 1058, and authorities there cited.)

The statutes of Porto Rico in regard to the employment of children, and limiting the hours of their labor, have reference not only to agricultural laborers but to such as work in manufacturing establishments, and also to boys and girls under 16 years old. (See Act of 25th February, 1902; sec. 5, Rev. Stat., p. 89, art. 166.)

There may have been some question as to whether, in a civil case, the trial judge was authorized, under our present Code, to make an ocular inspection of the premises and to base his judgment, at least partly, thereon. Such was the practice under the Spanish Code of Civil Procedure. (See Spanish Code of Civ. Proc., art. 632 *et seq.*)

Nothing is said on the subject in our present Code of Civil Procedure nor in the Law of Evidence adopted by our Legislature. Then as the practice formerly existed and has not been formally abolished, but has been tacitly continued, we will, in the absence of any objection raised thereto, not hold it to have been unauthorized or contrary to proper legal procedure. (*Claudio* v. *Union Society*, 2 Dec. P. R., p. 506.)

While we approve, in the main, the opinion filed in the record by the district judge, who tried the case, we cannot indorse what is said about the proof of the age of the lad Julio Díaz, the party in whose behalf this suit is brought. In the first place it may be conceded as shown by the record that neither the complaint nor the answer was sworn to; and for that reason a general denial such as that contained in defendant's answer was sufficient to put plaintiff on proof of the allegation of minority. (See Code of Civ. Pro., secs. 110 and 132.) But the plaintiff was not required to prove his age by the records; especially in the absence of any objection to other proof introduced by the plaintiff. The evidence offered and admitted that there had beeen a guardian appointed for him was sufficient to establish his status as being yet in his minority and his own testimony, based on family history or tradition, as well as on historical facts, was sufficient to fix his age at 15 or 16 years without the production of the records; and this fact, of his age at the time of the accident, must be regarded as proven in the absence of any objection made to such evidence and a ruling of the court made thereon.

The result reached by the trial judge in this cause, finding in effect that the plaintiff failed to establish his cause of action by the necessary proof, must be approved, and the judgment rendered by the court below in all things affirmed.

*Affirmed.*

Acting Chief Justice Hernández and Justice Wolf concurred.

Mr. Justice Figueras did not take part in the decision of this case.